United States v. Jamal Smalls. Good afternoon, Your Honors. May it please the Court. Richard Sullivan, representing Defendant Jamal Smalls. I'm well aware Your Honors are very familiar with the briefs, which are very extensive, so I won't belabor each and every point that we've raised, except that to the extent the judges have any questions, I'm happy to address any of the points. You have seven claims on appeal, is that right? Yes. Which one would you say is your strongest claim? Well, I'm not sure. I believe there's a number of very strong claims, but most importantly, I believe, is claim number one, sufficiency of the evidence as to the homicide count. The reason I say that's the most important, obviously, if the evidence was insufficient, then there would be double jeopardy and there would have to be a reversal. And also, if we turn to the other points, I believe as to the other errors which occurred as far as statements that came in and other evidence that came in that was prejudicial, the sufficiency of the evidence and the nature of the evidence as to the homicide touches on whether any other error was harmless, which we submit it was not. As to the evidence overall, there certainly was, in the evidence of the drug conspiracy, I don't want to say there's overwhelming evidence, but certainly voluminous evidence of involvement in a large-scale drug conspiracy, video evidence of sales to confidential informants, multiple witnesses, a long and, frankly, convoluted tale. As to the third count, though, the homicide, I submit that the evidence was remarkably flimsy. Now, that count as charged required that the homicide be committed in furtherance of the drug conspiracy charged in count one. Now, both as to Mr. Small's involvement in the homicide itself and as to that element of the charge, that it's in furtherance of the drug conspiracy, I submit the evidence is insufficient in both of those ways. The government presented two witnesses, precisely, who had anything to say whatsoever about Mr. Small's involvement in the homicide, Brandon Bordenado, who was a PCP addict who testified that he came to the Jod Adams houses that night to smoke PCP, and Mr. Harrison, who was the actual gunman, and testified that Jamal Smalls paid him to shoot Donyell White. Why is that flimsy evidence? Well, thank you, Your Honor, because these two witnesses, first of all, they present completely incompatible stories. Brandon Bordenado said that he and Jamal Smalls and Donyell White together stood in the stairway of the building smoking PCP together, and that then Donyell White and Jamal Smalls got into an argument about money and ran up the stairs, and that Brandon Bordenado then heard a shooting, and that Jamal Smalls then came back and handed Brandon Bordenado a gun, which Mr. Bordenado then hid in a parking lot. The co-defendant also charged in the conspiracy was Mr. Harrison. His testimony was that he was actually the gunman, but that he was paid to do so by Jamal Smalls, who never entered the building, but was in the vicinity in his car. The gun that was used in this shooting of Donyell White, and also in the shooting of Blake Moore earlier, was found in the possession of Mr. Harrison. Mr. Harrison was cooperating with the government, which by itself is certainly not enough to dismiss his testimony altogether, but certainly a strong indication that he has a motive to pin the blame on Jamal Smalls in order to receive better treatment himself. But simply the fact that these two witnesses present such drastically different, frankly incompatible testimony, that's enough to cast doubt on the sufficiency of Mr. Smalls' involvement in the homicide period. That's only one way in which that count fails. Also, as I noted, as an element, that count requires that the homicide was committed in furtherance of the drug conspiracy. Now, again, turning to the testimony of those two witnesses, Mr. Bordenado said that there was some dispute that arose between Jamal Smalls and Donyell White in the stairwell, but there was no testimony that it involved a drug conspiracy in any way. He said that it was a dispute about money that Donyell White owed to Jamal Smalls. Corey Harrison's testimony was that Jamal Smalls hired him to shoot Donyell White because Jamal Smalls was supposedly concerned that Donyell White was going to seek vengeance for the homicide of Blake Moore, who Jamal Smalls, according to Mr. Harrison, inaccurately believed was the brother of Donyell White. So these are two completely different motives, neither one of which in the slightest involves a drug conspiracy. Now, as I said, of course, there was a vast volume of evidence about a drug conspiracy, which all of these individuals supposedly were involved in. And to a layman, it may make sense that a person who is involved in a drug-selling organization may carry a firearm and that if a homicide occurs that it's probably in furtherance of that, but that's all pure supposition. As far as the evidence that was actually admitted by the government at trial, nothing touches on that element of the crime. So with that weakness in that particular count of the indictment in mind, in particular, there's not a lot of time, but I want to just point out what I believe are the largest errors that occurred. Point three, we talk about the testimony of Ashley Mintz. She was a family member of Donyell White. This testimony was just extraordinarily prejudicial, just really inflammatory. You were trying to exclude it based on Rule 403. Precisely. It had no bearing whatsoever on the question of whether the defendant was involved in a homicide at all. What it certainly did was made the jury hate this defendant and want to convict him. Even if he didn't commit the murder, they certainly would have wanted to convict him of it, hearing that he mocked the family of the deceased, including the deceased's 4-year-old daughter, when he encountered them in a bodega on the day of the funeral. I submit there's no basis whatsoever for this to come in. It's not probative of anything, and it's highly prejudicial. That should have been grounds for a mistrial. The evidence that Mr. Small supposedly said that he just did 15 years, that was grounds for a mistrial that should have been granted. The prosecution knew this beforehand. It was ruled inadmissible by the judge. The police witness blurted out on the stand that the defendant made this statement, that he just got out and did 15 years. So not evidence, though, that was before the jury that he was or had been in a maximum security prison? There was evidence that he was in prison and that that's where he met Mr. Harrison. Was it specifically a maximum security prison? Honestly, Judge, I don't recall, but I wouldn't dispute that if that's what the evidence is. But the trial judge did acknowledge that the sheer length of time, 15 years, was enough to tell the jury in and of itself that it was a serious crime. What mattered was that the two principals met in prison, became friends. Later on, this conspiracy happened. There was no need to know the precise, the great length of the sentence that he served. When it was blurted out, there was a motion for mistrial. That was denied, and that was error. Point five I would also like to direct the Court's attention to. There was a statement that Jamal Smalls, according to the arresting officer, said, I didn't leave witnesses. Not only was that statement not noticed in the voluntary disclosure form, but it should have been suppressed for the reasons we set out in point four regarding the suppression hearing, which I will answer questions on if the Court wishes. But I would just like to point out the statement, I didn't leave witnesses, is very different from the statement that was noticed, which was, you don't have witnesses. I don't leave witnesses is essentially a confession. I didn't leave witnesses or I don't leave witnesses in the context of the case, which is that they're talking about a wanted poster for homicide with a picture that looks like Mr. Smalls. So keeping in mind the insufficiency, particularly as to the homicide count, and I just submit to the Court, in the event that hypothetically this defendant was facing trial on a single count of homicide and all of the evidence was the same as to the homicide, there's no way that he could have been convicted on the scant evidence of being involved in the homicide that was presented here. So on that basis, each and every error which occurred as far as evidence which should not have come in cannot be said to be harmless. Furthermore, the evidence was insufficient. And on that, I would simply invite any questions the Court has. Thank you. Thank you very much. Thank you. Mr. Skinner. May it please the Court. Good afternoon. I'm Drew Skinner. I represent the United States on appeal. I represented the United States at the trial below. The judgment of the District Court should be affirmed. First, there was more than sufficient evidence for the jury to conclude that Smalls ordered Donnell White's murder in furtherance of the drug trafficking conspiracy. Corey Harrison's testimony that Smalls admitted he previously shot Blakemore and White because there was tension from them selling crack and that White had to get it to in case there would be retaliation is alone enough. That's in the record at 2028 and 2029. Yes, about the Rule 16, the alleged Rule 16 violation. Yes, Judge. So was the statement, I don't leave witnesses provided to the defense before trial? No, Judge. I think the statement that was provided was you have no witnesses, you have nothing. That was one of the list of statements provided. I'm sorry, I didn't answer your question specifically enough. That was one of the list of statements provided before the suppression hearing in this case, which happened in about July 2015 before the trial in November 2015. At the suppression hearing, the officer, Sergeant Bletcher, testified that the defendant said to him, I don't leave witnesses, that's impossible. So defense knew about that statement from Sergeant Bletcher at the suppression hearing. The government's view is that that was in effect sufficient to comply with this Rule 16 obligation in connection with that statement. Two points on that. First is that technically the statement may not have fallen under Rule 16 because it wasn't in response to police interrogation. Of course, the government would usually provide. And was that the rule in the Southern District of New York? Correct. Of course, we would usually provide it. Our failure to do so here was inadvertent. That said, though, the defendant plainly had that statement, was there with counsel, with an opportunity to cross the officer at that hearing, and then had a lot of time before trial. Where the standard is, did the failure to get the information substantially affect the defendant's trial strategy? And here I don't think it could have where he had three, four months before trial knowing that statement. Let me address the testimony of Ms. Mintz, which plainly is relevant in this case. The testimony is relevant for three reasons. First, it's an admission by Mr. Smalls of his guilt in this case, when considered with all of the other evidence. What he said was, boo-hoo, boo-hoo, that person got slaughtered. Now, Donnell White, the shirt that the woman was wearing, it's in the record, did not say this person was murdered. So the jury was entitled to question, how did he know that the person was slaughtered? It also displayed Mr. Smalls' dislike of the victim, Donnell White, which made it more likely that he would have wanted to kill him. And it demonstrated that he knew who Mr. White was, which was relevant evidence for the jury to consider. So given that, the value of that evidence surely outweighed any prejudicial effect of which we submit. The only prejudicial effect is that it was, in fact, probative of the defendant's guilt. Let me address the 15 years statement, which was inadvertently made by that officer. It was not in response to a direct question by the government, as in some of the other cases like Rinaldi and Pagan and Figueroa, where the government affirmatively brought in evidence of a defendant's prior conviction. That's not the case here. It was very brief, and as Judge Laurier pointed out, it came in the context of the jury already knowing that the defendant was in prison, had been convicted, including, as emphasized by defense counsel below, on cross-examination of Mr. Harrison. Including that, it was in a maximum security prison, Judge. I'll give you the citation for that. It was in the record at 2071, line 22. So given all of that, the fact that the statement came out about, I did 15 years, that Mr. Smalls said that, that is not prejudicial enough in this case that it would require a mistrial, especially given all of the other evidence of the defendant's guilt, which I should cover because it was mentioned by my colleague. First, Mr. Harrison's testimony that Mr. Smalls ordered, paid for, provided the gun for the murder, dropped Mr. Harrison off, picked him up afterwards. Mr. Harrison is corroborated on that by many other pieces of evidence. It's not just Mr. Bordenada. It's the cell site evidence that showed Mr. Harrison going the places he said he went, including near the defendant's girlfriend's house when he met with the defendant to discuss the murder. It's the phone records that show Harrison and Smalls in phone communication before and after the murder. It's the ballistics evidence that shows that the shell casings at the scene of the murder match the shell casings at Blake Moore's shooting, which Corey Harrison testified about, which Blake Moore testified about, and which Darrell Bland, another cooperator, said he received a confession, a jailhouse confession, basically, from Smalls to that. And those shell casings match the gun found in Harrison's apartment. Just like Harrison said, Mr. Smalls told me that he used that shooting to shoot Blake Moore. There is also the testimony of Ms. Wolfe that corroborated Brandon Bordenada about seeing White with Smalls in the apartment. And there's Ashley Mintz's testimony about the statement that Mr. Smalls made to her afterwards. So it's not the case that it's only Mr. Bordenada. And it's also not the case that Mr. Bordenada conflicts with Mr. Harrison's testimony. The evidence about that incident of Smalls, White, Bordenada being in the stairwell smoking, that came before the murder in this case. Same day, but before it that night. And the testimony from Mr. Bordenada, I think the fair inference for the government in this case, is that Mr. Smalls wanted to set up Mr. White that night to be robbed, shot, killed. He asked Mr. Bordenada to help with that. A dispute arose, again, which I think the fair inference from is that it was a drug-related dispute. That's why Donnell White owed Mr. Smalls money. And Mr. Smalls tried to shoot him, but he got away. That's when Mr. Smalls had to go to Corey Harrison and said, can you do this for me? Unless the court has any other questions, the government will rest on our submission. Thank you very much. Mr. Sullivan has not reserved extra time, so we will proceed to hear argument in the last case on our calendar. This case will be submitted for decision, and you'll be hearing from us in due course.